Hearing Date and Time:  December 21, 2016 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline Date and Time:  December 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)
Reply Deadline Date and Time:  December 16, 2016 at 4:00 p.m. (Prevailing Eastern Time)

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY  10022
Tel: (212) 704-6000
Jonathan D. Forstot
Louis A. Curcio
David A. Pisciotta

*Attorneys for Capital One Equipment Finance
Corp., f/k/a All Points Capital Corp., d/b/a
Capital One Taxi Medallion Finance*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RED BULL TAXI INC.,<br><br>                  Debtor. | Chapter 11<br><br>Case No. 16-13153 (MKV) |

**MEMORANDUM OF LAW OF CAPITAL ONE EQUIPMENT FINANCE CORP.
IN SUPPORT OF MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE
OR TO GRANT RELIEF FROM THE AUTOMATIC STAY AND EITHER
APPOINT A CHAPTER 11 TRUSTEE OR CONVERT DEBTOR'S CASE
TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

29741666v7

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF FACTS ............................................................................ 4

    COTMF's Secured Claim Against the Debtor is Reduced to Judgment ........................... 4

    The Debtor and Mr. Freidman's Suit to Vacate the Judgment is Dismissed ..................... 5

    COTMF's Medallion Repossessions and the Debtor's Commitment to Cooperate
    with a Foreclosure Sale of the Medallion Minifleet ........................................... 5

ARGUMENT ............................................................................................. 6

    I.    Cause Exists to Dismiss or to Convert this Case to Chapter 7, Pursuant to
        § 1112(b) of the Bankruptcy Code ................................................... 6

        A.    Cause Exists for Dismissal or Conversion Because this Case was
            Filed in Bad Faith ............................................................... 7

            1.    Each of the CT-C Factors Demonstrates Bad Faith ........... 7

            2.    This Case was Filed in Bad Faith Because it was
                Filed for the Improper Purposes of Benefitting Non-
                Debtors ......................................................................... 11

            3.    The Hypnotic Bankruptcy Cases Demonstrate Mr.
                Freidman's Bad-Faith Abuse of the Bankruptcy
                Process ........................................................................ 11

                a.    The Hypnotic Bankruptcy Cases
                    Demonstrate that this Debtor has no
                    Reasonable Likelihood of Reorganization ........... 12

                b.    Mr. Freidman's Conduct in the Hypnotic
                    Cases Demonstrates his Bad Faith Use of
                    the Bankruptcy Process ...................................... 13

        B.    Cause Exists for Dismissal or Conversion Because of Continuing
            Diminution of the Estate and the Absence of Reasonable
            Likelihood of Rehabilitation ................................................ 14

        C.    Dismissal is the Appropriate Remedy .................................... 16

*—[Continued on Following Page]—*

# TABLE OF CONTENTS
(Continued)

II. The Court Should Lift the Automatic Stay with Respect to COTMF's Collateral ................................................................................................ 17

    A. Cause Exists to Lift the Stay Pursuant to § 362(d)(1) ............................ 17

        1. Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because the Debtor Cannot Provide Adequate Protection ......................................................... 17

    B. Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because the Case was Filed in Bad Faith ................................ 19

    C. Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because of Substantial and Continuing Diminution to the Estate and the Absence of a Reasonable Likelihood of Rehabilitation ............. 20

    D. Stay Relief Should be Granted Pursuant to § 362(d)(2) ......................... 20

        1. The Debtor Admittedly Has No Equity in the Medallion Minifleet ........................................................ 21

        2. The Medallion Minifleet is Not Necessary to an Effective Reorganization ................................................ 22

III. In the Alternative to Dismissal or Conversion, the Court Should Appoint a Chapter 11 Trustee Pursuant to § 1104 of the Bankruptcy Code ...................... 23

    A. Section 1104(a) of the Bankruptcy Code ................................................ 23

    B. "Cause" Exists for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104(a)(1) ................................................ 24

        1. The Debtor's Proposed Restructuring is Premised Entirely on a Contract with an Insider, which the Debtor Failed to Disclose ................................................ 24

        2. The Conduct of the Debtor's Management in the Taxi Industry and the Hypnotic Bankruptcy Cases Demonstrates Cause to Appoint a Trustee ..................... 25

    C. The Appointment of a Chapter 11 Trustee is in the Interests of Creditors Pursuant to Section 1104(a)(2) ................................ 26

CONCLUSION ................................................................................................ 29

29741666v7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
 113 F.3d 1304(2d Cir. 1997)..........................................................2, 7, 8, 10, 11, 13

*In re 234–6 West 22nd St. Corp.*,
 214 B.R. 751 (Bankr. S.D.N.Y. 1997)..................................................................20

*In re 499 W Warren St. Assocs., Ltd*,
 151 B.R. 307 (Bankr. N.D.N.Y. 1992) ............................................................18, 22

*In re 51–53 W. 129th St. HDFC, Inc.*,
 475 B.R. 391 (Bankr. S.D.N.Y. 2012)..................................................................20

*In re Adelphia Commc'n Corp.*,
 336 B.R. 610 (Bankr. S.D.N.Y. 2006)..................................................................27

*In re AMC Realty Corp.*,
 270 B.R. 132 (Bankr. S.D.N.Y. 2001)...............................................................7, 20

*In re Ashley River Consulting, LLC*,
 Case No. 14-13406 (MG), 2015 Bankr. LEXIS 1008 (Bankr. S.D.N.Y. March 31,
 2015) ...............................................................................................................24, 25, 26

*In re Balco Equities Ltd, Inc.*,
 312 B.R. 734 (Bankr. S.D.N.Y. 2004)................................................17, 18, 19, 20

*In re BH S&B Holdings, LLC*,
 439 B.R. 342 (Bankr. S.D.N.Y. 2010)..................................................................16

*In re Canal Place Ltd. P'ship*,
 921 F.2d 569 (5th Cir. 1991) ................................................................................15

*In re Cohoes Indus. Terminal, Inc.*,
 931 F.2d 222 (2d Cir. 1991)..................................................................................13

*In re Diplomat Electronics Corp.*,
 82 B.R. 688 (Bankr. S.D.N.Y. 1988)....................................................................16

*In re East 81st, LLC*,
 Case No. 13-13685 (SMB), 2014 Bankr. LEXIS 1024 (Bankr. S.D.N.Y. March 17,
 2014) ....................................................................................................................16

*In re Elmiro Litho, Inc.*,
 174 B.R. 892 (S.D.N.Y. 1994)..........................................................................17, 18

*In re Eurospark Indus., Inc.,*
    424 B.R. 621 (Bankr. E.D.N.Y. 2010) ...................................................................28

*In re FRGR Managing Member LLC,*
    419 B.R. 576 (Bankr. S.D.N.Y. 2009) ..................................................................15

*In re Gorman,*
    Case No. 11-73029-ast, 2011 Bankr. LEXIS 4181 (Bankr. E.D.N.Y. 2011) ...................18, 22

*In re Inwood Heights Housing Development Fund Corp.,*
    Case No. 11–13322 (MG), 2011 Bankr. LEXIS 3251 (Bankr. S.D.N.Y. Aug. 25,
    2011) ...................................................................................................................20

*In re Ionosphere Clubs, Inc.,*
    113 B.R. 164 (Bankr. S.D.N.Y. 1990) ..............................................................23, 27

*In re Kaplan Breslaw Ash, LLC,*
    264 B.R. 309 (Bankr. S.D.N.Y. 2001) ......................................................... passim

*In re Lyons Transp. Lines, Inc.,*
    123 B.R. 526 (Bankr. W.D. Pa. 1991) ..................................................................15

*In re Plaza De Retiro, Inc.,*
    417 B.R. 632 (Bankr. D.N.M. 2009) ....................................................................25

*In re Soundview Elite, Ltd.,*
    503 B.R. 571 (Bankr. S.D.N.Y. 2014) ..................................................................27

*In re Stearns Building,*
    Civ. No. 98-1257, 1998 U.S. App. Lexis 22121 (6th Cir. Sept. 3, 1998)................................19

*In re Syndicom Corp.,*
    268 B.R. 26 (Bankr. S.D.N.Y. 2001) ..............................................................10, 11

*In re Wings Digital Corp.,*
    No. 05-12117(ALG), 2005 Bankr. LEXIS 3476 (Bankr. S.D.N.Y. May 16, 2005)................27

*In re Éclair Bakery, Ltd.,*
    255 B.R. 121 (Bankr. S.D.N.Y. 1985) ..................................................................20

*Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.),*
    374 B.R. 556 (Bankr. M.D. Pa. 2007) ............................................................14, 15

*Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.,*
    139 B.R. 828 (W.D. Ky. 1992) ...............................................................................8

*Taub v. Adams,*
    No. 10-CV-02600(CBA), 2010 U.S. Dist. LEXIS 104805 (E.D.N.Y. Aug. 31, 2010)...........27

iv

*Tennessee Publishing Co. v. American Nat'l Bank*,
  299 U.S. 18 (1936)............................................................................................15

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*,
  484 U.S. 365 (1988)......................................................................................15, 22

**STATUTES**

11 U.S.C. § 362(d) ...........................................................17, 16, 19, 20, 21, 22, 29

11 U.S.C. § 362(g) ...............................................................................................18, 21

11 U.S.C. § 1112(b) .............................................................................................7, 14, 20

11 U.S.C. § 1104...............................................................7, 23, 24, 26, 27, 28, 29

11 U.S.C. § 1129(b)(2)(A) .................................................................................16

N.Y. UCC § 9–102.............................................................................................19

N.Y. UCC § 9–315.............................................................................................19

**OTHER AUTHORITIES**

*Rule 1007-2 of the Local Bankruptcy Rules* .................................................8

v

<u>**PRELIMINARY STATEMENT**</u>

This case bears all of the hallmarks of a bad faith filing.  The Debtor filed just hours before a sale of its sole asset—three taxi medallions it lost possession of many months ago; two through repossession and one it voluntarily gave up.  This Debtor does not even have a bank account.  It has no prospect of survival, much less reorganization.

Moreover, its principal has filed other bankruptcies, which have had no chance of success, running up millions in unpaid—administrative fees that cannot be paid before being converted to chapter 7.  He has the dubious distinction of having been found to have given testimony generally lacking in credibility.  He has had a series of injunctions issued against him and assets he has attempted to convey offshore have been attacked by court order.

This case is "dead on arrival" and cannot be revived.

The undisputed facts of this case necessitate immediate dismissal or conversion, stay relief, and, in the alternative, appointment of a chapter 11 trustee:

- The Debtor is a special-purpose entity that owns a single asset—a group of three New York City Taxi Medallions (the "<u>Medallion Minifleet</u>" as defined more fully below), which is fully encumbered to secure a judgment in excess of $2 million to movant Capital One Taxi Medallion Finance ("<u>COTMF</u>").

- The Debtor has no employees, operations or even cash flow.

- Its revenues and asset values have precipitously declined for more than two years to a point where the Debtor has received no cash over the last six months.

- It has few, if any, other legitimate creditors, whose claims are vastly smaller than COTMF's secured claim.

1

- This case is a two-party dispute that is best resolved through state-law remedies.

- The timing of this filing demonstrates the Debtor's bad faith, as after agreeing to cooperate with COTMF's foreclosure of the Medallion Minifleet, the Debtor commenced this case on the morning of the scheduled sale.

Each of these facts fit squarely within the test in the Second Circuit to dismiss a case "for cause" under § 1112(b). *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997). In accordance with that standard, this case must be dismissed.

Moreover, allowing this case to proceed would be futile. Although the Debtor currently has no revenue, the Debtor's principal, Evgeny Freidman, professes that the Debtor is working toward redeploying COTMF's collateral. Unfortunately, even if this were to happen, the Debtor admits it anticipates monthly revenues of only $4,500—cash that will not even be received by the Debtor. Given these absurdly low cash flows, there is no reasonable prospect of a successful reorganization of this Debtor within a reasonable period of time. Allowing this case to proceed in chapter 11 will only harm the very few parties involved by unnecessarily generating administrative expenses that the Debtor cannot pay.

Dismissal or conversion is also necessary to protect the integrity of the bankruptcy process. Mr. Freidman is an abuser of the bankruptcy process. In July 2015, Mr. Freidman caused 22 of his taxi-medallion-holding companies to file voluntary chapter 11 petitions, and it did not end well (the "Hypnotic Bankruptcy Cases" as further defined below). In contrast to this case, Mr. Freidman recognized the need to fund administrative expenses, and agreed to cause an affiliated management company to fund a DIP loan. Ultimately, Mr. Freidman reneged on those obligations, leaving the debtors with no way to fund their cases. After filing two patently

2

unconfirmable plans, the debtors in the Hypnotic Bankruptcy Cases (the "<u>Hypnotic Debtors</u>")

finally admitted that they could not reorganize.  After a little more than a year floundering in

chapter 11, the cases were converted to chapter 7—administratively insolvent and burdened by

nearly $1.4 million of unpaid professional fees.

And yet, the Hypnotic Debtors had several substantial advantages this Debtor lacks.  The

Hypnotic Debtors purported to generate more than twice the revenue per medallion that this

Debtor hopes to, their bankruptcy counsel charged significantly lower rates than proposed

counsel to this Debtor, the Hypnotic Debtors obtained approval for a $350,000 DIP financing

facility (which Mr. Freidman later refused to fund), and the administrative costs of chapter 11

that this Debtor will have to bear alone were shared among the 22 Hypnotic Debtors.  If the

Hypnotic Debtors could not successfully reorganize with these substantial advantages, this case

is doomed from the start.

Moreover, Mr. Freidman's behavior in the Hypnotic Bankruptcy Cases demonstrates his

abject lack of good faith in seeking bankruptcy protection.  Mr. Freidman failed to fund the DIP

loan he committed to provide.  Mr. Freidman gave testimony that the court found to be dishonest

and lacking in credibility.  And, Mr. Freidman demonstrated reckless disregard for the court, the

creditors, and the assets of the estate by threatening to cancel the insurance on 46 taxis and taxi

medallions and abandon them on a public street in Queens.  The bankruptcy process is not a

game as Mr. Freidman seems to treat it, and the Court should not allow Mr. Freidman to continue

his abuses here.

For the reasons set forth more fully herein, this case should be dismissed because (i) it

was filed in bad faith; (ii) it was filed for the improper purpose of enriching Mr. Freidman

through insider deals; and (iii) there is substantial and continuing diminution to this estate and no

reasonable likelihood of rehabilitation. In the alternative, and for the same reasons, this case should be converted to a case under chapter 7 title 11 of the United States Code (the "Bankruptcy Code"). If this case is not immediately dismissed, COTMF is entitled to stay relief because, the Debtor cannot provide COTMF with adequate protection and because the Debtor admittedly has no equity in COTMF's collateral and an effective reorganization of this Debtor is impossible. Finally, if this case is not dismissed or converted to chapter 7, the Court should appoint a chapter 11 trustee to manage the Debtor's affairs.

## STATEMENT OF FACTS

### COTMF's Secured Claim Against the Debtor is Reduced to Judgment

1.      COTMF is the holder of a judgment by confession (the "Judgment") against the Debtor entered on October 23, 2015, in the total amount of $1,869,622.27—$1,826,629.18 severally and $42,993.09, jointly and severally, with all other defendants. (Robinson Decl. ¶ 25, Ex. O.)

2.      As of November 14, 2011 (the "Petition Date") the total amount owed by the Debtor to COTMF in respect of the Judgment was $2,048,089.59, which includes the $1,869,622.27 awarded to COTMF in the Judgment plus $178,467.32 of accrued pre-petition, post-judgment interest through the Petition Date. (Robinson Decl. ¶ 33.)

3.      The Judgment arises from a secured loan (the "Loan") given to the Debtor on or about November 22, 2011 in the principal amount of $1,950,000. (Robinson Decl. ¶¶ 7–8.)

4.      The Judgment is secured by a perfected, first priority security interest in substantially all of the Debtor's assets, including but not limited to the New York City Taxi Medallions (each a "Medallion") identified as Medallion numbers 3G26 ("Medallion 3G26"),

4

3G27 ("<u>Medallion 3G27</u>"), and 9P55 ("<u>Medallion 9P55</u>" and together with Medallion 3G26 and

Medallion 3G27 (the "<u>Medallion Minifleet</u>"). (Robinson Decl. ¶¶ 11–12, 16, Exs. C–D, H.)

5.      The Loan was also personally guaranteed by the Debtor's principal, Evgeny

Freidman and a separate judgment has been entered against him in respect of his guaranty

liability.

**The Debtor and Mr. Freidman's Suit to Vacate the Judgment is Dismissed**

6.      On August 14, 2015, the Debtor, Mr. Freidman, and numerous other Freidman

controlled entities (collectively, the "<u>Freidman Plaintiffs</u>") commenced a baseless action against

COTMF by filing a summons and complaint (the "<u>Freidman Complaint</u>") in the Supreme Court

of New York, New York County, seeking, among other things, to declare the Judgment vacated.

(Robinson Decl. ¶ 26., Ex. P.)

7.      On June 8, 2016, the court granted COTMF's motion to dismiss the Freidman

Complaint in its entirety. (Robinson Decl. ¶ 27, Ex. Q.)

8.      The Freidman Plaintiffs filed a notice of appeal of the dismissal of the Freidman

Complaint on July 8, 2016, but have yet to perfect the appeal. (Robinson Decl. ¶ 28, Ex. R.)

**COTMF's Medallion Repossessions and the**
**Debtor's Commitment to Cooperate with a Foreclosure Sale of the Medallion Minifleet**

9.      In April of 2016, COTMF engaged the services of a third party to repossess the

Medallion Minifleet. (Robinson Decl. ¶ 29.)

10.     By mid-May 2016, COTMF had repossessed Medallion 3G27 and Medallion

9P55 and, as required, placed them into storage with the NYC Taxi & Limousine Commission

(the "<u>TLC</u>"). (Robinson Decl. ¶¶ 30–31, Exs. S–T.)

11.     COTMF was unable to repossess the third Medallion, Medallion 3G26, because it was voluntarily placed into storage with the TLC by the Debtor.  (Pisciotta Decl. ¶ 3 Ex. A.)

12.     On October 17, 2016, counsel to COTMF informed Mr. Brett Berman of Fox Rothschild LLP, who purported to represent the Debtor, that COTMF intended to conduct a foreclosure sale of the repossessed medallions pursuant to its rights under the New York Commercial Code (the "NY UCC").  (Pisciotta Decl. ¶ 4, Ex. B.)  In response, Mr. Berman indicated that the Debtor would "voluntarily surrender 3G26 to [COTMF] so that all 3 [medallions] can be sold together."  (Pisciotta Decl. ¶ 5, Ex. C.)

13.     Counsel to COTMF scheduled and widely noticed a public sale of the Medallion Minifleet for November 14, 2016.  (Pisciotta Decl. ¶¶ 6–7, Exs. F–G.)

14.     On the morning of November 14, 2016 (the "Petition Date"), the Debtor reneged on its promise to cooperate with the scheduled foreclosure sale and proposed bankruptcy counsel to the Debtor sent notice by e-mail to COTMF's counsel that the Debtor had commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (Pisciotta Decl. ¶ 8, Ex. H.)

## ARGUMENT

**I.      Cause Exists to Dismiss or to Convert this Case to Chapter 7, Pursuant to § 1112(b) of the Bankruptcy Code**

Section 1112(b) of the Bankruptcy Code provides in part that:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

6

11 U.S.C. § 1112(b)(1).  Section 1112(b)(4) then sets forth a non-exclusive list of grounds that

constitute "cause" under subsection 1112(b)(1), including "substantial or continuing loss to or

diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C.

§ 1112(b)(4), (b)(4)(A).  This list, however, is not exclusive and courts may find that cause exists

to dismiss a case under § 1112(b) for other reasons, including where the case was filed in bad

faith.  *See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304,

1313 (2d Cir. 1997); *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001); *In re

Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001).

Here, ample cause exists to dismiss this case or to convert it to a case under chapter 7 of

the Bankruptcy Code because (i) it was filed in bad faith; (ii) it was primarily filed for the

improper purpose of benefitting non-debtors; and (iii) there is substantial or continuing loss to or

diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

### A.    Cause Exists for Dismissal or Conversion Because this Case was Filed in Bad Faith

#### 1.    Each of the *CT-C* Factors Demonstrates Bad Faith

In the Second Circuit, courts look to the following list of factors as indicative of a bad

faith filing (hereinafter referred to as the "_C-TC_ factors"):

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (quoting *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828 (W.D. Ky. 1992)). Each of the *C-TC* factors is present in this case.

First, the Debtor owns only one significant asset—the Medallion Minifleet. (*First Day Affidavit of Evgeny Freidman Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (hereafter the "First-Day Aff."), ECF No. 2 ¶ 7.)

Second, there are few, if any, legitimate unsecured creditors, whose claims are dwarfed by COTMF's secured claims. As of the Petition Date, COTMF's secured claim against the Debtor totaled $2,048,089.59. By contrast, the Debtor's list of 20 largest unsecured creditors includes only seven claims that are not contingent, unliquidated, or disputed or for which the amount is listed as "unknown." (First-Day Aff. Ex. D.) Of those seven, five are de minimis claims, purportedly arising from unpaid legal bills, aggregating a mere $1,502.50. (*Id.*) The only significant, liquidated unsecured claims are two "prepetition loans," each in the amount of $75,000, from affiliates of the Debtor (the "Insider Loans"). (*Id.*) The Insider Loans were incurred solely to fund a retainer for the Debtor's proposed counsel. (*Application to Employ and Retain Porzio, Bromberg  Newman, P.C. as General Bankruptcy Counsel for Debtor, Nunc Pro Tunc as of the Petition Date* (hereinafter cited as the "Retention App."), ECF No. 3 ¶ 12.) Moreover, both "creditors" are insiders, which are owned, in whole or in part, and controlled by the Debtor's principal, Mr. Freidman. (*Id.*)

8

<u>Third</u>, the Debtor's sole asset—the Medallion Minifleet—is the subject of a foreclosure by COTMF as a result of the Debtor's default on its debts to COTMF.  (Pisciotta Decl. ¶¶ 6–8.)

<u>Fourth</u>, this is, undoubtedly, a two-party dispute.  The Debtor's assets are fully encumbered by COTMF's lien, and COTMF's claim can be resolved through its state-law remedies, without incurring the administrative expense of funding this chapter 11 case.

<u>Fifth</u>, the timing of the Debtor's filing demonstrates that this case was commenced solely to delay and frustrate COTMF's legitimate efforts to enforce its rights against its collateral.  The Debtor defaulted under its loan from COTMF more than two years ago.  COTMF obtained a judgment against the Debtor more than a year ago and post-judgment interest has been accruing at the statutory rate of 9%.[1]  Throughout this time, the Debtor's income has been rapidly declining and it has had little or no income for approximately six months because the Debtor's medallions were repossessed or placed in storage.  (Robinson Aff ¶¶ 30–32).  The Debtor sat idly by while its liabilities increased, the value of its asset plummeted, and its revenue declined to nothing.  But, the Debtor did not file this case until <u>the morning of</u> COTMF's scheduled sale of the Medallion Minifleet, of which it had approximately a month's notice and with which it agreed to cooperate.  Therefore, the timing of this case evidences that this case was filed to frustrate and delay COTMF's foreclosure, rather than being motivated by an earnest desire to rehabilitate the Debtor.

<u>Sixth</u>, the Debtor admits that its income has precipitously declined in recent years and that it has recently had <u>zero</u> income.  (First-Day Aff. ¶ 19.)  And, if the Debtor successfully recovers the Medallion Minifleet from the TLC and is permitted to operate, which is uncertain, it projects a mere $4,500 in monthly revenue.  (First-Day Aff. ¶9, Ex. M.)

---

[1] New York Civil Practice Law and Rules (the "<u>CPLR</u>") §§ 5003–04.

29741666v7

Seventh, the Debtor's inability to meet current expenses is evident from its lack of any income and the mere $4,500 per month of revenue it hopes to generate, if it manages to restart its business. Even if the Debtor meets its projections, its monthly income will not even cover nine hours of its proposed counsel's time at $545.50—the average of the highest and lowest rates charged for attorneys. (Retention App., ECF No. 3 ¶ 10.) The Debtor's inability to meet administrative expenses is effectively admitted by the fact that the Debtor's proposed counsel received a $150,000 retainer to file this case, which is nearly three years of the Debtor's projected revenues. To suggest that the Debtor will be able to fund the administrative costs of this case and fund a confirmable plan of reorganization on a mere $4,500 per month is simply absurd.

Eighth, and finally, the Debtor readily admits that it has no employees. (First-Day Aff. ¶ 23.) Indeed, the Debtor is nothing more than a single-purpose entity that conducts no operations, has no bank accounts, and serves no other purpose than to own COTMF's collateral—the Medallion Minifleet.

Consequently, application of the *C-TC* factors—each of which is present in this case—leaves no doubt that this case was filed in bad faith. Once a creditor introduces evidence demonstrating that a petition was filed in bad faith, the burden shifts to the Debtor to prove good faith. *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (citations omitted.). This the Debtor cannot do.

29741666v7

### 2.    This Case was Filed in Bad Faith Because it was Filed for the Improper Purposes of Benefitting Non-Debtors[2]

Further cause exists to dismiss this case for bad faith because it "was filed with both the purpose and effect of securing benefits for non-debtor[s]." *In re Syndicom Corp.*, 268 B.R. 26, 52 (Bankr. S.D.N.Y. 2001). The Debtor admits that the true purpose of this case is to preserve the ability of non-debtor Tunnel Taxi Management, LLC (the "Tunnel Management") to profit from the Medallion Minifleet. (First-Day Aff. ¶ 12–13.) This, alone, is sufficient cause to dismiss the case for bad faith. *In re Syndicom Corp.*, 268 B.R. at 52 (finding cause existed to dismiss a case for bad faith where it was filed principally to avoid the eviction of the debtor's principals from their apartment and to preserve their profit on "flipping" the lease).

More troubling than the Debtor's admission that this case was filed for the improper benefit of Tunnel Management is the Debtor's omission of the fact that Mr. Freidman controls, and is the one-third owner of Tunnel Management. (Pisciotta Decl. ¶ 15, Ex. U). The Debtor's failure to disclose this conflict of interest demonstrates bad faith. It is evident that this case is a scheme by Mr. Freidman to avoid paying COTMF what it is owed, while he continues to profit off of its collateral through Tunnel Management. This case should, therefore, be dismissed for bad faith because it was filed primarily to benefit a non-debtor insider and because of the Debtor's bad-faith failure to disclose this significant conflict of interest.

### 3.    The *Hypnotic* Bankruptcy Cases Demonstrate Mr. Freidman's Bad-Faith Abuse of the Bankruptcy Process

Mr. Freidman's bad-faith abuse of the bankruptcy process is already well-documented in a group of cases that were commenced under nearly identical circumstances to this case. In July

---

[2] The Debtor's petition lists COTMF's claim as disputed. (First-Day Aff. Ex. E.) If the Debtor seeks to use this case to collaterally attack the Judgment, this too is improper and necessitates dismissal. *C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship.)*, 113 F.3d 1305, 1310 (2d Cir. N.Y. 1997) ("[A]n entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally[.]").

29741666v7

of 2015, Mr. Freidman caused 22 of his wholly-owned companies, the Hypnotic Debtors, to

commence the Hypnotic Bankruptcy Cases, under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the Eastern District of New York.[3]

> a.    **The *Hypnotic* Bankruptcy Cases Demonstrate that this Debtor has no Reasonable Likelihood of Reorganization**

The Hypnotic Bankruptcy Cases demonstrate that a successful reorganization of this

Debtor is impossible.  In September of 2016, after the filing of two patently unconfirmable plans

of reorganization, the Hypnotic Debtors admitted their inability to reorganize and the cases were

converted to chapter 7.  (*Hypnotic*, ECF Nos. 337, 344, 368; Pisciotta Decl. Exs. J–k, N.)  At the

time of conversion, the estates were administratively insolvent with unpaid professional fees

totaling almost $1.4 million.  ((*Hypnotic Taxi*, ECF No. 376, 1–2; Pisciotta Decl. Ex. O.)  Every

fact indicates that permitting this case to proceed in chapter 11 would lead to a worse result.

The management, principal assets, business model, and debt structure of the Hypnotic

Debtors are identical or similar to those of this Debtor.  Yet, the Hypnotic Debtors had several

substantial advantages this Debtor does not.  At the time of filing, the Hypnotic Debtors

purported to generate more than twice the monthly revenue per medallion than the paltry $1,500

this Debtor hopes to.[4]  The administrative expenses of the Hypnotic Bankruptcy Cases were

spread among 22 debtors owning 46 medallions; this Debtor owns 3 medallions and would have

to fund the entire case alone.  And this Debtor's proposed counsel charges higher rates than

bankruptcy counsel to the Hypnotic Debtors.[5]  If the Hypnotic Debtors could not successfully

---

[3] The Hypnotic Bankruptcy Cases are procedurally consolidated under the case captioned, *In re Hypnotic Taxi, LLC*, Case No. 15-43300 (CEC) (Bankr. E.D.N.Y.).  Citations to filings in the Hypnotic Bankruptcy Cases shall be in the following form: "*Hypnotic*, ECF No. __."

[4] (*Hypnotic* ECF No. 2, Pisciotta Decl. Ex. I, ¶¶ 33, 58.)

[5] The average of the highest and lowest rates for attorney time charged by counsel to the Hypnotic Debtors is $437.50 (*Hypnotic*, ECF No. 49-1) and it is $545.50 for Debtor's proposed counsel. (Retention App., ECF No. 3 ¶ 10.)

29741666v7

reorganize with more than double the proportionate revenue and significantly lower

proportionate expenses, it is absurd to suggest that this case has any reasonable prospect of a

successful reorganization within a reasonable time.  The failure of the Hypnotic Bankruptcy

Cases, despite those debtors' advantages, therefore, demonstrates that this case was filed in bad

faith because "it is clear that, on the filing date the debtor has no reasonable probability of

emerging from the bankruptcy proceedings and no realistic chance of reorganizing."  *In re C-TC*

*9th Ave. P'ship*, 113 F.3d at 1310 (citing *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227

(2d Cir. 1991)).

> b. **Mr. Freidman's Conduct in the *Hypnotic* Cases Demonstrates his Bad Faith Use of the Bankruptcy Process**

Mr. Freidman's conduct in the Hypnotic Bankruptcy Cases, individually and through his

companies, further demonstrates his bad-faith use of the bankruptcy process.  Mr. Freidman's

failure to fund a court-approved DIP loan he committed to provide through one of his companies

exacerbated those cases' administrative insolvency at the time of conversion.  (*Hypnotic*, ECF

No 351-1 at 4; Pisciotta Decl. Ex. M.)  Mr. Freidman demonstrated an abject lack of respect for

the court, the Bankruptcy Code, and creditors by threatening to cancel the insurance on all of the

Hypnotic Debtors' assets—46 taxicabs and medallions—and abandon them on a public street in

Queens, without court approval.  (*Citibank, N.A. v. 28th Street Management, Inc.*, Adv. Pro. No.

16-1152, ECF No. 2-2 (Bankr. E.D.N.Y.); Pisciotta Decl. Ex. P; *Hypnotic*, ECF No. 347,

Pisciotta Decl. Ex. L.)

Mr. Freidman's bad faith is also demonstrated by his lack of honesty and candor with the

court in the Hypnotic Bankruptcy Cases.  Judge Craig, who presides over the Hypnotic

Bankruptcy Cases, found that Mr. Freidman perpetrated a fraudulent scheme to place his

personal assets into foreign trusts, "with the aim of frustrating judgment creditors" and "in an

effort to strip himself of assets a judgment creditor could readily execute on." (*Citibank, N.A. v. Bombshell Taxi LLC*, Adv. Pro. No. 15-01185 (CEC), ECF No. 73 at 20, 22, 24; Pisciotta Decl. Ex. Q.)  Moreover, Judge Craig found that Mr. Freidman's testimony was "[s]elf-contradictory, evasive and unconvincing[,]" and "utterly lacking in credibility" and found that his testimony "strains credulity."  (*Id.* at 22, 26.)

The Hypnotic Bankruptcy Cases demonstrate that there is no reasonable prospect of reorganization of this Debtor and Mr. Freidman has sought the protection of this Court in bad faith.  In light of Mr. Freidman's documented abuses of the chapter 11 process, combined with the presence, in this case, of all of the *CT-C* factors, Mr. Freidman should not be given another chance to abuse the bankruptcy process. This case should be dismissed immediately as a bad faith filing.

**B.      Cause Exists for Dismissal or Conversion Because of Continuing Diminution of the Estate and the Absence of Reasonable Likelihood of Rehabilitation**

The bases for cause enumerated in § 1112(b)(4) include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).  Section 1112(b)(4)(A) requires a twofold inquiry.  *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).  "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented."  *Id.*

On the first prong, there is no doubt that the Debtor is suffering losses.  The Debtor has zero revenue and, at most, hopes to generate a modest $4,500 per month if it can restart its business.  (*Id.* ¶¶ 9, 40.)  The Debtor admits that this filing was preceded by a precipitous drop in

14

the value of its only asset and a corresponding drop in its revenues.  (First-Day Aff. ¶¶ 19–20.)

The $4,500 per month the Debtor hopes to receive is woefully insufficient to fund even the

administrative costs of a chapter 11 case, let alone make adequate protection payments to

COTMF.  *See In re Lyons Transp. Lines, Inc.*, 123 B.R. 526, 531 (Bankr. W.D. Pa. 1991)

(mounting administrative expenses constitutes a diminution of the estate); *In re FRGR Managing

Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009).  Moreover, there is no indication that

medallion values or revenues will cease to decline.  Given the several-year decline in this

Debtor's revenue and the value of its assets, the lack of any basis to expect a recovery, and the

administrative expenses of maintaining a chapter 11 case, it is nearly certain that diminution of

the estate will occur if this case proceeds in chapter 11.

Regarding the second prong, the Debtor must "do more than manifest unsubstantiated

hopes for a successful reorganization."  *In re Gateway Access Solutions*, 374 B.R. 556 (quoting

*In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991)).  This means that, "[t]here

must be a reasonable possibility of a successful reorganization within a reasonable time."  *Id.*

(quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)).  The

Court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation."

*Id.* (quoting *Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22 (1936)).

The track record of the Hypnotic Bankruptcy Cases and the undisputed facts of this case

demonstrate that a "successful reorganization within a reasonable time" is impossible.  A plan

that complies with the requirements of the Bankruptcy Code simply cannot be confirmed over

15

COTMF's objection, given the amount of COTMF's secured claim, the lack of any significant

unsecured creditor body, and the extremely modest future revenue projections.[6]

### C.    Dismissal is the Appropriate Remedy

Where, as here, cause has been established under § 1112(b), "[t]he decision whether to

convert or dismiss is committed to the Court's discretion." *In re East 81st, LLC*, Case No. 13-

13685 (SMB), 2014 Bankr. LEXIS 1024 at *21 (Bankr. S.D.N.Y. March 17, 2014) (citations

omitted). *See also In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

COTMF respectfully submits, that dismissal is the appropriate remedy because, upon conversion

to chapter 7, COTMF would be entitled to immediate stay relief pursuant to § 362(d)(2), in

which case there would be no remaining assets for a chapter 7 trustee to administer. *In re*

*Roxrun Estates, Inc.*, 74 Bankr. 997, 1003 (Bankr. S.D.N.Y. 1987) ("In a chapter 7 case if there

is no equity in the property sought to be foreclosed, the stay should be lifted because there can be

no question that the property is not necessary for an effective reorganization."); *In re Diplomat*

*Electronics Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988); *In re East 81st, LLC*, 2014 Bankr.

LEXIS 1024 at *21–22.

---

[6] Given the amount by which COTMF is undersecured, COTMF will likely control the unsecured creditor class meaning that the Debtor will not be able to confirm a plan that "crams down" COTMF over its objection. Moreover, even accepting the Debtor's estimate of the value of COTMF's secured claim ($1,500,000) as true, the Debtor could not meet the requirements of Bankruptcy Code § 1129(b)(2)(A). The Debtor has no other assets with which to provide COTMF with the indubitable equivalent of its collateral. The Debtor professes no intent to sell the Medallion Minifleet, but even if it did, COTMF would receive a lien on all of the proceeds leaving no estate to administer. And, if the Debtor intends to make deferred cash payments to COTMF, as the First-Day Affidavit indicates (First-Day Aff. ¶ 22), then even if the Debtor devoted its entirely monthly revenue of $4,500 to paying COTMF, it would take more than 27 years to satisfy the requirement that deferred cash payments "total at least the amount of such claim." § 1129(b)(2)(A)(i)(II). If COTMF takes the § 1111(b) election, in which case its entire claim would be treated as secured for confirmation purposes, this would increase to more than 37 years. A plan that purports to pay off a secured claim over more than 27 years cannot be considered "fair and equitable" in an industry where the standard loan term is 2-3 years. Thus, COTMF essentially holds a veto to block any proposed plan of reorganization and its lack of consent to this case all but guarantees that the Debtor cannot successfully reorganize.

29741666v7

## II.      The Court Should Lift the Automatic Stay with Respect to COTMF's Collateral

In the alternative to dismissal, COTMF seeks relief from the automatic stay with respect to its collateral, pursuant to subsections (d)(1) and (d)(2) of § 362 of the Bankruptcy Code. Sections 362(d)(1) and 362(d)(2) are disjunctive; the court must lift the stay if either of the two grounds is shown.  *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001) (citing *In re Elmiro Litho, Inc.*, 174 B.R. 892, 900 (S.D.N.Y. 1994)).  The burden of proof on a motion to lift the automatic stay is a shifting one; COTMF must make an initial showing of cause, upon which, § 363(g) shifts the burden to the Debtor for all issues other than the Debtor's equity in the property.  *Id.* at 321–22.

### A.      Cause Exists to Lift the Stay Pursuant to § 362(d)(1)

Section 362(d)(1) provides that "on request of a party in interest and after a hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property."  11 U.S.C. § 362(d)(1).  Cause is not defined in the Bankruptcy Code, but courts have discretion to determine that it exists on a case by case basis.  *In re Balco Equities Ltd, Inc.*, 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004) (citation omitted).

#### 1.      Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because the Debtor Cannot Provide Adequate Protection[7]

Although not the exclusive basis, § 362(d)(1) states that a lack of adequate protection of the movant's interest in estate property is sufficient cause to lift the stay.  11 U.S.C. § 362(d)(1). COTMF is entitled to adequate protection for any decline or threat of decline in the value of its collateral during the imposition of the automatic stay.  *In re Balco Equities Ltd, Inc.*, 312 B.R. at 751 (citation omitted).  A secured creditor need not always quantify the decline in value and

---

[7] In the alternative, if Court determines that adequate protection payments can be made, the Court should order such payments.

may, under certain circumstances, "prove its *prima facie* case 'without quantifying the decline in value . . . by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments.'"  *Id.* (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (alteration in original).  This approach "depends on the strength of the inference that the value of the debtor's property declines over time." *Id.* (quoting *In re Elmira Litho, Inc.*, 174 B.R. at 892).

Here, the declining value of the Medallion Minifleet is established by the Debtor's admissions.  The Debtor admits and the TLC's publicly available data shows that, as late as March of 2014, sales of corporate unrestricted medallions were at or around $1.25 million per medallion.  (First-Day Aff ¶¶ 14, 20.)  The Debtor estimates that, as of the Petition Date, values have fallen to $500,000 or less.[8]  (First-Day Aff ¶¶ 14, 20.)  In the Debtor's own words, medallion prices have "fallen precipitously since . . . February 2014."  (*Id.* ¶ 20.)  There is no evidence that this nearly three-year, precipitous decline in medallion values has halted or will halt during the pendency of this case.  Accordingly, COTMF has established its *prima facie* entitlement to adequate protection.  *See In re 499 W Warren St. Assocs., Ltd*, 151 B.R. 307, 310 (Bankr. N.D.N.Y. 1992) (creditor carried burden of establishing lack of equity in property through debtor's admission); *In re Gorman*, Case No. 11-73029-ast, 2011 Bankr. LEXIS 4181 at

---

[8] COTMF relies on the Debtor's admissions as to medallion values as well as publicly available information the purposes of this motion and respectfully submits that the Debtor's admission that it has no equity in the Medallion Minifleet is binding on it and satisfies COTMF's burden under § 362(g).  COTMF submits that the value of the Medallion Minifleet is below the amount of COTMF's claim, but COTMF does not, for the purposes of this motion, take a position with respect to actual medallion values.  COTMF reserves the right to challenge any purported medallion valuation and to introduce evidence on medallion values at any point during this case.

*14 (Bankr. E.D.N.Y. 2011) (creditor carried burden of proving lack of equity where only

evidence as to value was debtor's scheduled value of property fell below amount of claim).[9]

Having carried its burden to show that the value of the Medallion Minifleet is declining,

the burden shifts to the Debtor to prove that COTMF is otherwise adequately protected.  *In re*

*Balco Equities LTD, Inc.*, 312 B.R. at 751.  The Debtor cannot meet this burden because it has no

unencumbered assets with which to provide COTMF with adequate protection.  Any lease

payments derived from the Medallion Minifleet are COTMF's cash collateral,[10] the use of which

COTMF does not consent, and the Debtor has not sought authorization to use, nor would it be

entitled to.  *See In re Stearns Building,* Civ. No. 98-1257, 1998 U.S. App. Lexis 22121, *14-15

(6th Cir. Sept. 3, 1998) (denial of use of cash collateral was proper where use of cash collateral

"if permitted . . . clearly would diminish [the secured creditor's] interest in the assignment of

rents portion of its perfected security interest."). Therefore, the Court should grant COTMF's

request to lift the automatic stay with respect to the Medallion Minifleet pursuant to § 362(d)(1)

of the Bankruptcy Code.

### B.     Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because the Case was Filed in Bad Faith

As with dismissal under § 1112(b), "relief from the stay [under 11 U.S.C. § 362], may be

found based on unenumerated factors, including bad faith, or failure to deal with creditors fairly

---

[9] The Debtor's admission is further supported by publicly available documents published by the TLC, which report the consideration paid for recent medallion sales.  Specifically, in October of 2016, there was only a single transfer of corporate unrestricted medallions, the type comprising the Medallion Minifleet, which sold for $950,000 for the pair.  (Pisciotta Decl. Ex. T.)

[10] The security interest granted by the Debtor to COTMF not only included the Medallion Minifleet but "all proceeds and products thereof."  (Robinson Decl. Ex. C. at 2.)  Pursuant to section 102 of the NY UCC, "proceeds" of collateral includes "whatever is acquired upon the . . . lease . . . or other disposition of collateral [and] . . . [w]hatever is collected on, or distributed on account of, collateral."  N.Y. UCC § 9–102(64)(A)–(B).  Pursuant to NY UCC § 9–315, "a security interest attaches to any identifiable proceeds of collateral. . . . [and] [a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected."  N.Y. UCC § 9–315(a)(2), (c).  Therefore, COTMF has a first-priority security interest in any cash generated from the use of lease of the Medallion Minifleet.

19

even where bad faith' is not found." *In re Balco*, 312 B.R. at 748 (quoting *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001); *In re Éclair Bakery, Ltd.*, 255 B.R. 121, 138 (Bankr. S.D.N.Y. 1985). In either context—dismissal under § 1112(b) or lifting the stay under § 362(d)(1)—"the standards for bad faith as evidence of cause are not substantively different." *In re 234–6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). "[W]here the circumstances require such relief, and the cases granting both types of motions are legion, a judge must not shrink from ordering it." For all of the reasons set forth in section I.A of this memorandum, COTMF is entitled to stay relief pursuant to § 362(d)(1) because this case was filed in bad faith.

C.     **Cause Exists to Lift the Automatic Stay Pursuant to § 362(d)(1) Because of Substantial and Continuing Diminution to the Estate and the Absence of a Reasonable Likelihood of Rehabilitation**

A demonstration of cause to dismiss or convert a case under § 1112(b)(4)(A) because of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[,]" is sufficient to demonstrate entitlement to relief from the automatic stay pursuant to § 362(d)(1). *In re 51–53 W. 129th St. HDFC, Inc.*, 475 B.R. 391, 399 (Bankr. S.D.N.Y. 2012) (quoting 11 U.S.C. § 1112(b)(4)(A)) (citing *In re Inwood Heights Housing Development Fund Corp.*, Case No. 11–13322 (MG), 2011 Bankr. LEXIS 3251 at *6 (Bankr. S.D.N.Y. Aug. 25, 2011)). Therefore, for the reasons set forth in section I.B of this memorandum, cause exists to lift the automatic stay with respect to COTMF's collateral pursuant to § 362(d)(1) of the Bankruptcy Code.

D.     **Stay Relief Should be Granted Pursuant to § 362(d)(2)**

Section 362(d)(2) of the Bankruptcy Code states, in relevant part that "the court shall grant relief from the stay . . . if—(A) the debtor does not have any equity in such property; and

20

(B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

COTMF bears the burden of proof on the issue of the Debtor's interest in the property; after

which, the Debtor bears the burden regarding its necessity for an effective reorganization. *In re*

*Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001) (citing 11 U.S.C.

§ 362(g)). To meet this initial burden, a secured creditor must show "(1) the amount of its claim;

(2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the

debtor lacks equity in the property." (*Id.* citation omitted). "'Equity' means the difference

between the value of the property and the total amount of claims that it secures." *Id.* COTMF's

burden is easily met.

### 1.     The Debtor Admittedly Has No Equity in the Medallion Minifleet

COTMF's claim has been reduced to the Judgment against the Debtor, entered on

October 23, 2015, in the total amount of 1,869,622.27. (Robinson Decl. ¶ 25, Ex. O.) The

Judgment has been accruing interest from the date of entry at the statutory rate of 9% and totals

$2,048,089.59 as of the Petition Date. (Robinson Decl. ¶¶ 33–36.) The Debtor's obligations to

COTMF, which have been liquidated by the Judgment, are secured by a security interest in

substantially all of the Debtor's assets, including the Medallion Minifleet. (Robinson Decl. ¶ 11,

Ex. C.) COTMF perfected this first-priority security interest in the Medallion Minifleet by filing

a UCC financing statement with the New York Secretary of State on November 22, 2011, which

was continued by filing a UCC financing statement amendment on August 25, 2016. (Robinson

Decl. ¶¶ 12, 16, Exs. D. H.) Accordingly, COTMF has carried its burden demonstrating that its

claim is perfected by a valid first-priority security interest in the Medallion Minifleet in the

amount of $2,048,089.59.

21

The Debtor's lack of equity in the Medallion Minifleet is, easily demonstrated by the

Debtor's admission that it believes that the value of each medallion does not exceed $500,000.

*See In re 499 W Warren St. Assocs., Ltd*, 151 B.R. 307, 310 (Bankr. N.D.N.Y. 1992) (creditor

carried burden of establishing lack of equity in property through debtor's admission); *In re*

*Gorman*, Case No. 11-73029-ast, 2011 Bankr. LEXIS 4181 at *14 (Bankr. E.D.N.Y.

2011)(creditor carried burden of proving lack of equity where only evidence as to value was

debtor's scheduled value of property fell below amount of claim).

### 2.  The Medallion Minifleet is Not Necessary to an Effective Reorganization

Having established that the Debtor lacks equity in the Medallion Minifleet, the burden

shifts to the Debtor to prove that it is, nonetheless, necessary to an effective reorganization.

11 U.S.C. § 362(d)(2); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. at 322.  As the Supreme Court

explained, "[w]hat this requires is not merely a showing that if there is conceivably to be an

effective reorganization, this property will be needed for it; but rather that the property is

essential for an effective reorganization *that is in prospect*."   *United Sav. Ass'n of Tex. v.*

*Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376–77 (U.S. 1988); *see also In re Kaplan*

*Breslaw Ash, LLC*, 264 B.R. at 309 (citing and applying *Timbers of Inwood Forest Assocs.*).

This means "that there must be 'a reasonable possibility of a successful reorganization within a

reasonable time.'" *Timbers of Inwood Forest Assocs.*, 484 U.S. at 377 (citation omitted).  The

Debtor cannot meet this burden.  For the reasons set forth in section I of this memorandum, the

Debtor cannot confirm a plan of reorganization over COTMF's objection and has no reasonable

prospect of reorganization.  Accordingly, COTMF is entitled to relief from the automatic stay

with respect to the Medallion Minifleet pursuant to § 362(d)(2) of the Bankruptcy Code.

**III.   In the Alternative to Dismissal or Conversion, the Court Should Appoint a Chapter 11 Trustee Pursuant to § 1104 of the Bankruptcy Code**

**A.   Section 1104(a) of the Bankruptcy Code**

Section 1104(a) of the Bankruptcy Code sets forth two alternative standards for the court's determination of the necessity of appointing a chapter 11 trustee. Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

"In considering a motion for the appointment of a trustee, a bankruptcy court is not required to conduct a full evidentiary hearing." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990) (citation omitted). Nonetheless, COTMF bears the burden of demonstrating cause to appoint a trustee by clear and convincing proof. *Id.* at 168 (citation omitted). Here, there is ample evidence to support a finding of cause under either § 1104 (a)(1) or (a)(2).

**B.     "Cause" Exists for the Appointment of a Chapter 11 Trustee Pursuant to Section 1104(a)(1)**

The list of factors enumerated in § 1104(a)(1) is not exclusive; other factors that may

militate in favor of appointing a trustee include "conflicts of interest, including inappropriate

relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate

recordkeeping and reporting; various instances of conduct found to establish fraud or dishonesty;

and lack of credibility and creditor confidence." *In re Ashley River Consulting, LLC*, Case No.

14-13406 (MG), 2015 Bankr. LEXIS 1008, *28 (Bankr. S.D.N.Y. March 31, 2015).  The focus

of the Court's inquiry pursuant to subsection (a)(1) of § 1104 is the debtor's current management

and "[a] court may consider <u>both pre- and post-petition misconduct</u> of the current management

when making the determination that 'cause' exists for the appointment of a trustee."  *Id.*

(emphasis added) (citation omitted).  Here, there is ample evidence—both in the public record

and in judicial findings by another bankruptcy court—to demonstrate cause, including,

dishonesty, incompetence, and gross mismanagement by the Debtor's current principal and

management, Mr. Freidman.

**1.     The Debtor's Proposed Restructuring is Premised Entirely on a Contract with an Insider, which the Debtor Failed to Disclose**

Here, the Debtor's proposed restructuring is premised entirely on the revenue it hopes to

receive from Tunnel Management for its management of the Medallion Minifleet.  (First-Day

Aff. At ¶ 9.)  The Debtor failed to disclose, however, that Mr. Freidman controls Tunnel

Management and owns a one-third interest therein.  The Debtor's failure to disclose this

fundamental conflict of interest in its initial filings, despite significant discussion of Tunnel

Management, is sufficient, alone, to warrant appointment of a trustee under § 1104(a)(1).

"Where a debtor 'fails to disclose material and relevant information to the Court and creditors, a

24

chapter 11 trustee is required.'" *In re Ashley River Consulting, LLC*, Case No. 14-13406 (MG),

2015 Bankr. LEXIS 1008, *28 (Bankr. S.D.N.Y. March 31, 2015) (quoting *In re Plaza De*

*Retiro, Inc.*, 417 B.R. 632, 641 (Bankr. D.N.M. 2009)).

Irrespective of the Debtor's failure to disclose it, this significant conflict of interest

independently warrants the appointment of a trustee. *Id.* ("[f]actors relevant to the appointment

of a trustee under § 1104(a)(1) include . . . conflicts of interest." (citation omitted)).  The sole

source of revenue upon which the Debtor hopes it will fund this case is Tunnel Management.

(First-Day Aff. ¶ 9.)  Mr. Freidman is proposing is that he retain all of the benefits of ownership

of the Medallion Minifleet—any profits made by Tunnel Management after payment of the fixed

lease to the Debtor as well as any future appreciation in the value of the Medallion Minifleet—

while consigning COTMF and any other legitimate creditors to a payment stream of $4,500 per

month.  Mr. Freidman cannot simultaneously honor his fiduciary duties to both the Debtor and

Tunnel Management—they are fundamentally at odds.  Mr. Freidman's incentives clearly

militate against maximizing revenue to the Debtor.  Every dollar that Tunnel Management

generates from use of the Medallion Minifleet that is not paid into the estate of this Debtor, is

another dollar that Mr. Freidman keeps for himself.  If this case is permitted to proceed in

chapter 11, a trustee is necessary to oversee it.

> **2.**     **The Conduct of the Debtor's Management in the Taxi Industry and
> the *Hypnotic* Bankruptcy Cases Demonstrates Cause to Appoint a
> Trustee**

Mr. Freidman's misuse of the bankruptcy process for the sole purpose of frustrating his

and his companies' secured creditors is well documented in the *Hypnotic* Bankruptcy Cases as

set forth above in section I.A.2 of this memorandum.  Standing alone, Mr. Freidman's behavior

in the *Hypnotic* Bankruptcy Cases is sufficient cause to appoint a chapter 11 trustee.  Indeed,

even in those cases, a CRO was appointed at the beginning of the case to oversee and manage the debtors' operations.  (CITE).

Mr. Freidman's conduct outside of bankruptcy—through his management companies, including Tunnel Management—casts further doubt on his suitability to manage the Debtor. Tunnel Management, as well as 28th Street Management, Inc., Downtown Taxi Management, LLC, and Woodside Management Inc.  (the "Freidman Management Companies") are all parties to an Assurance of Discontinuance (the "AOD") entered into with the Attorney General of the State of New York (the "NYAG") on December 17, 2013.  (Pisciotta Decl. Ex. R.)  In 2013, the NYAG commenced an investigation of the Freidman Management Companies and concluded that they repeatedly violated TLC regulations by illegally charging drivers certain fees and by failing to enter into written lease agreements with a significant number of their drivers. (Pisciotta Decl. Ex. R, 5–6.)  Thereafter, on April 23, 2015, the NYAG commenced a special proceeding alleging that Mr. Freidman and the Freidman Management Companies had continued these illegal practices and breached the terms of the AOD.  (Pisciotta Decl. Ex. S.)  The NYAG, proceeding was resolved through a Consent Order, in which Mr. Freidman and the Freidman Management Companies, among other things, agreed to pay $50,000 in damages and to the appointment of an independent monitor to oversee the Freidman Management Companies' future compliance with the TLC rules.  (Pisciotta Decl. Ex. S.)  The AOD and Consent Order demonstrate Mr. Freidman's repeated and systematic violations of TLC rules and regulations for his own economic benefit.  This is sufficient cause to appoint a chapter 11 trustee in this case.

### C.     The Appointment of a Chapter 11 Trustee is in the Interests of Creditors Pursuant to Section 1104(a)(2)

Even if a court does not find that cause exists to appoint a trustee under § 1104(a)(1), it may still appoint one pursuant to § 1104(a)(2), if it is in the best interest of creditors.  *See e.g. In*

*re Ashley River Consulting* 2015 Bankr. LEXIS 1008 at *34.  *See also In re Ionosphere Clubs*

*Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).  The appointment of a trustee under

§ 1104(a)(2) of the Bankruptcy Code "is a lesser standard than under § 1104(a)(1)" and affords

the court more discretion.  *Taub v. Adams*, No. 10-CV-02600(CBA), 2010 U.S. Dist. LEXIS

104805, at *13 (E.D.N.Y. Aug. 31, 2010); *In re Wings Digital Corp.*, No. 05-12117(ALG), 2005

Bankr. LEXIS 3476, at *12-13 (Bankr. S.D.N.Y. May 16, 2005).  This is a "fact-driven analysis,

principally balancing the advantages and disadvantages of taking such a step."  *In re Soundview*

*Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014) (citing *In re Adelphia Commc'n Corp.*,

336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006).)

Among the factors considered by the courts in assessing motions brought under section

1104(a)(2) are:

> (1) the trustworthiness of the debtor, (2) the debtor's past and
> present performance and prospects for rehabilitation, (3) the
> confidence—or lack thereof—of the business community and of
> creditors in present management, and (4) the benefits derived from
> the appointment of a trustee, balanced against the cost of the
> appointment.

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (citations omitted).

Each one of these considerations militates in favor of appointing a chapter 11 trustee in this case.

On the first factor, Mr. Freidman's lack of trustworthiness is readily established by Judge

Craig's determination that his testimony was "self-contradictory, evasive and unconvincing . . .

[and] utterly lacking in credibility."  (Pisciotta Decl. Ex. Q, 20, 24.)  Mr. Freidman's lack of

trustworthiness is further established by his failure to disclose to this Court his significant

conflict of interest as a result of his one-third ownership and management of Tunnel

Management.  And, Mr. Freidman's lack of trustworthiness is established by his pervasive and

systematic violation of the TLC's rules and regulations as evidenced by the AOD and Consent Order entered into with the NYAG.

On the second factor—the debtor's past and present performance and prospects for rehabilitation—this Debtor has not generated any revenue several months and has not made a payment to its secured creditor in over two years.

On the third factor—the confidence, or lack thereof, of the business community and of creditors in present management—COTMF, the largest creditor in the case, has no confidence in Mr. Freidman and he is being actively pursued by and is engaged in acrimonious litigation with the other significant lenders to him and his companies.  See e.g., *In re Eurospark Indus., Inc.*, 424 B.R. 621, 630 (Bankr. E.D.N.Y. 2010) (recognizing that "[a]lso weighing in favor of the appointment of a chapter 11 trustee is the lack of trust in [management] by the parties with the greatest economic stake in this case" when appointing a trustee pursuant to section 1104(a)(2)). Mr. Freidman is even being sued by his former business partners and is alleged by them to have engaged in serious fraudulent activity.  (Pisciotta Decl. Exs. V–W.).

Finally, the fourth factor—the benefits derived from the appointment of a trustee, balanced against the cost of the appointment—weighs heavily in favor of the appointment of a chapter 11 trustee.  The Debtor's current management, Mr. Freidman, has serious conflicts of interest and there are also serious concerns about his honesty and fair dealing with creditors and bankruptcy courts.  The cost of appointing a chapter 11 trustee in this case should be relatively modest because the Debtor is a non-operating holding company; there are no operations to manage other than entering into and enforcing a lease of the Medallion Minifleet.  Accordingly, if this Court does not dismiss or convert this case it would be in the best interest of creditors to appoint a chapter 11 trustee pursuant so § 1104(a)(2).

## CONCLUSION

For the reasons stated herein, COTMF respectfully requests that the Court (i) dismiss this case pursuant to § 1112(b) of the Bankruptcy Code; (ii) convert this case to a case under chapter 7 of the Bankruptcy Code pursuant to § 1112(b); or (iii) appoint a chapter 11 trustee pursuant to § 1104(a) of the Bankruptcy Code; and, in the alternative or in addition to any other form of relief requested herein, (iv) grant COTMF relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code.

Dated:  New York, New York
      December 5, 2016            TROUTMAN SANDERS LLP

By: */s/ Jonathan D. Forstot*
      Jonathan D. Forstot
      Louis A. Curcio
      David A. Pisciotta
      875 Third Avenue
      New York, New York 10022
      Telephone: (212) 704-6000

*Counsel for Capital One Equipment Finance Corp., f/k/a All Points Capital Corp. d/b/a Capital One Taxi Medallion Finance*

29